# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERRARA CANDY COMPANY<br>Plaintiff,<br>v.<br>AMERICAN CONTINENTAL LIMITED; AMERICAN FIZZ (UK) LIMITED; LD DISTRIBUTION SERVICES, L.L.C.; BRAD ARMITAGE; and REZA AGHAJANZADEH,<br>Defendants. | Case No. 2:25-cv-08249-CV (BFMx)<br>**JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT LD DISTRIBUTION, LLC** |

On June 8, 2026, Plaintiff Ferrara Candy Company ("Ferrara") and Defendant LD Distribution, LLC ("Defendant" or "LD Distribution") filed a Stipulation for Entry of Final Judgment and Permanent Injunction. The Court, having considered the Stipulation, and good cause having been found, hereby ORDERS, ADJUDICATES, and DECREES that final judgment, including permanent injunction, shall be and hereby is entered on the Complaint in the above referenced matter as follows:

**JUDGMENT**

**IT IS HEREBY FOUND BY THE COURT**, with the consent of the Plaintiff Ferrara Candy Company ("Ferrara") and Defendant LD Distribution, LLC ("LD Distribution") that:

1. This Court has jurisdiction over Ferrara and LD Distribution, has subject matter jurisdiction over this action, and venue is proper.
2. Ferrara is an Illinois corporation, having offices at 404 Harrison Street, Chicago, Illinois 60607.
3. LD Distribution is a New Jersey limited liability company having offices at 459 Route 31 South, Washington Township, New Jersey 08827.
4. Ferrara is a recognized global leader in confections, and, together with its affiliates, makes, distributes, markets, and sells throughout the United States numerous well known, distinctive, and famous candy products, including under the famous NERDS brand.
5. Following the success of the *Willy Wonka & the Chocolate Factory* movie, which premiered in 1971, Ferrara's predecessors-in-interest introduced a series of candy products. One of the Wonka-themed candy products introduced by Ferrara's predecessor-in-interest is the NERDS candy product. Specifically, NERDS candy products were first introduced by Sunmark Corporation as part of its Willy Wonka Brands candy division in 1982.
6. The Willy Wonka Brands division was subsequently acquired by Societe des Produits Nestlé S.A. ("Nestlé"), and Ferrara and its related company ultimately

acquired Nestlé's U.S. confectionery business, including the iconic NERDS family of products. Ferrara and its related company also own the exclusive rights to use the WONKA Brand in connection with its confectionary products.

7. The NERDS brand was first introduced in 1982 in association with Ferrara's novel candy product featuring small, irregularly shaped pieces of candy in bright colors (the "Original NERDS Product").

8. The distinct varying and irregular pebble design of the Original NERDS Product is itself a registered trademark, with U.S. Registration Numbers 7799631 and 7799633.

| **Mark** | **Exemplary Product** |
|---|---|
|  |  |

9. Ferrara's NERDS candy products have been manufactured, marketed, and sold in different flavor and style variations under the famous NERDS trademarks, distinctive product packaging, and characteristic product designs, including its iconic "cloud of sweets" logo (the "NERDS Cloudf Logo") and NERDS characters.

NERDS



10. Ferrara is also well-known for its iconic and distinctive dual color product packaging schemes, including the below marks used in connection with its iconic NERDS brand ("the NERDS Dual Color Packaging Trade Dress").

| Mark | Exemplary Product |
|---|---|
|  |   |
|  |   |

11. Ferrara and its predecessors have long marketed, distributed, and sold candy and related products (including flavored drink mixes and frozen confections) under the famous NERDS trademarks, distinctive product packaging, and characteristic product designs. Ferrara markets and sells several NERDS products throughout the United States and in this district. Representative images of NERDS products are depicted below.






12. In addition to its extensive common law rights, Ferrara owns numerous federal registrations for the iconic NERDS trademarks, product packaging, and product designs, including the registrations identified in Exhibit A. The marks shown in the federal registrations listed in Exhibit A, together with the common law rights, are hereinafter collectively referred to as the "NERDS Marks."

13. In addition to the classic Original NERDS Product, Ferrara sells or has sold products like NERDS Drink Mix, NERDS ROPE (Registration No. 7293519), BIG CHEWY NERDS (Registration No. 7784304), and BABY NERDS (Registration No. 7807228), (collectively the "NERDS Family of Products").

14. The NERDS candy brand has achieved enormous commercial success as reflected by its extensive sales, which has been supported by significant marketing and promotional campaigns throughout the United States, including in California.

15. As a result of Ferrara's extensive use and promotion of the NERDS Marks and the NERDS Family of Products, consumers have come to associate the famous NERDS Marks with Ferrara and its iconic candies.

16. As a result of Ferrara's extensive sales, promotion, and advertising of candy products under the NERDS Marks, they have become famous among the general consuming public of the United States and represent an extraordinarily valuable goodwill owned by Ferrara.

17. In 1988, Ferrara's predecessor-in-interest introduced the DWEEBS candy product as part of the NERDS family of products and marketed the candy as the "cousin" of the NERDS candy product, using the well-known synonym of the term "nerd."

18. As the "cousin" of the NERDS candy products, the DWEEBS candy product featured slightly larger, softer, and chewier pieces of the Original NERDS Product, while retaining a similar irregular and variable pebble appearance.

19. The DWEEBS candy products were wildly popular and heavily marketed with NERDS candy and other WONKA-themed candy products.

20. Although, the DWEEBS products were discontinued in the late 1990s, to date, as a result of the tremendous popularity of the DWEEBS candy product due to its strong association with the NERDS Family of Products, the DWEEBS brand continues to enjoy extensive goodwill and is still associated with Ferrara and its famous NERDS Marks and NERDS Family of Products.

21. Long after Ferrara and/or its predecessor's first use of the NERDS Marks on its family of products, LD Distribution began marketing, selling, distributing, and otherwise promoting the sale of various candy products under the DWEEBS mark (collectively "DWEEBS Products") through various channels. A representative sample of Defendants' infringing DWEEBS Products are shown below.










22. The DWEEBS Products have been intentionally associated with Ferrara and its iconic NERDS Marks and candy products through the use of confusing similar trademarks, including by adopting a nearly identical and confusingly similar

dual color packaging, cloud logo, product design, and characters on its packaging (collectively "DWEEBS Packaging").




23. Further, the product configuration of the Dweebs Products is nearly identical to the product configuration of the Original NERDS Product.

24. As demonstrated above, the DWEEBS Products and Packaging incorporate numerous elements of Ferrara's iconic NERDS Marks.

25. The infringing DWEEBS Products are available for distribution to retailers in the United States, including here in California, through Defendant LD Distribution.

26. While there appears to be various iterations of the DWEEBS Marks currently in use in connection with the DWEEBS Products (shown below), each of the marks trades off the goodwill of the NERDS Marks, utilizing the infringing

DWEEBS word mark, a small, irregular, and variable pebble like candy product configuration that infringes the Original NERDS Product, and product packaging elements that infringe numerous of the NERDS Marks.








27. LD Distribution's use of the DWEEBS Marks and DWEEBS Packaging is likely to deceive, cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to and does falsely create the impression that Defendants' goods are produced by or in association with Ferrara.

28. On September 2, 2025, Ferrara commenced this action against LD Distribution alleging claims for trademark infringement, trademark dilution, and unfair competition under federal and California state law based on LD Distribution's unauthorized marketing, sale, and distribution of DWEEBS Products.

29. The marketing, sale, distribution, and advertising of DWEEBS Products constitutes:

   a. trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

   b. unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and California common law;

   c. dilution in violation of Section 43(c) of the Lanham Act, § 1125(c) and California Business and Professions Code §§14330-14335;

   d. false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and

   e. unfair competition in violation of California Business and Professions Code §§ 17200 et seq.

30. Therefore, the Court finds that injunctive relief is appropriate.

**ORDER**

IT IS FURTHER ORDERD, ADJUDGED, AND DECREED, with the consent of Plaintiff Ferrara and Defendant LD Distribution that:

a. LD Distribution, its agents, corporate and entity affiliates related through common ownership or control, principals, servants, employees, agents, attorneys, heirs, executors, administrators, successors and assigns, and all persons or entities acting in concert or participation with them or any of them, are hereby permanently enjoined from:

   i. the manufacture, marketing, sale, advertising, and distribution of DWEEBS Products or any other unauthorized products bearing or advertised under the DWEEBS Marks, and any mark similar to or dilutive of the NERDS Marks;

   ii. using or authorizing the use of the DWEEBS Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, in any form, or in any manner, or otherwise infringing the NERDS Marks;

   iii. otherwise unfairly competing with, injuring the business or reputation of, or damaging the goodwill of Ferrara in any manner;

   iv. otherwise falsely representing themselves or any of their products as being associated or affiliated with, sponsored or endorsed by, or in any way connected with Ferrara; and

   v. otherwise harming the distinctive quality of the NERDS Marks.

b. LD Distribution and all others holding by, through or under it, are hereby required, jointly and severally, to:

   i. cease sales of the DWEEBS Products through retailers or on the Internet, including websites owned or operated by LD Distribution

or any of its affiliates, and any social media platforms owned or operated by LD Distribution or any of its affiliates; and

ii. destroy all of the DWEEBS Products in its possession, including packaging, and any advertising, marketing, or promotional materials that include references to DWEEBS Products.

c. The Final Judgment and Permanent Injunction shall have no effect on any of Ferrara's claims against any other defendants to this action besides LD Distribution. Notwithstanding the foregoing, this Court shall retain jurisdiction over this action, as it relates to LD Distribution, to enforce the Final Judgment and Permanent Injunction.

d. Before filing any motion to enforce the Final Judgment and Permanent Injunction, the Parties must meet and confer in good faith to resolve the issue. The opposing party must confer with counsel for the moving party within ten (10) days after the moving party requests such conference.

**e.** If the Parties are unable to settle the dispute, the parties shall file a joint stipulation to be served with the notice of motion. The joint stipulation must contain all the issues in dispute, and the contentions and points and authorities for each party. The Court will not consider any motion to enforce the Final Judgment and Permanent Injunction in the absence of a joint stipulation or a declaration from the moving party establishing that opposing counsel (a) failed to confer in a timely manner as outlined in Paragraph 33; (b) failed to provide the opposing party's portion of the joint stipulation; or (c) refused to sign and return the joint stipulation after the opposing party's portion was added.

**IT IS SO ORDERED.**

Dated: 7/16/26

Cynthia Valenzuela
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE